ADAM L. BRAVERMAN
United States Attorney
BRUCE C. SMITH
Assistant U.S. Attorney
California State Bar No. 078225
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8266
E-mail: bruce.smith@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>$56,365.00 IN U.S. CURRENCY,<br><br>             Defendant. | Case No. '18CV0341 BEN MDD<br><br>COMPLAINT FOR FORFEITURE |

By way of complaint against the defendant $56,365.00 IN U.S. CURRENCY ("$56,365 in currency"), plaintiff UNITED STATES OF AMERICA alleges:

1. This Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section 1355(a) and Title 21, United States Code, Section 881(a)(6), because the defendant $56,365 in currency constitutes money furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to an exchange for controlled substances in violation of Chapter 13 of Title 21, United States Code.

2. Venue is proper in this district pursuant to
//

USAO:2018v00004:BCS/bfs

Title 28, United States Code, Section 1395 because the defendant $56,365 in currency was found in this district.

3. On September 14, 2017, in the Southern District of California, at the San Diego International Airport ("SDIA"), members of the San Diego Integrated Narcotics Task Force ("NTF") Commercial Interdiction Unit were on duty, seeking to intercept and seize controlled substances and proceeds from the sales of controlled substances passing though the airport.

  A. The Task Force officers ("TFO") were trained and experienced, and knew that persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA and the aircraft that arrived and departed there to distribute controlled substances throughout the United States.

  B. The Task Force officers were trained and experienced, and knew that persons engaged in the commercial interstate distribution of controlled substances frequently used SDIA and the aircraft that arrived and departed there to transport drug sales proceeds and funds to be used to purchase drugs in and out of San Diego. Those proceeds and funds were usually in the form of United States currency.

  C. The Task Force officers were trained and experienced, and knew that persons engaged in the commercial interstate distribution of controlled substances frequently used couriers to transport controlled substances, drug sales proceeds, and funds to be used to purchase drugs in and out of San Diego. SDIA and the aircraft that arrived and departed

there are relied upon as a means of sending and receiving such couriers.

4. On or about September 14, 2017, NTF Task Force officers and Drug Enforcement Administration ("DEA") agents assigned to SDIA learned that JUAN FRANCISCO ESPINOZA ("ESPINOZA") was traveling from Hartsfield-Jackson Atlanta International Airport ("ATL") in Atlanta, Georgia to SDIA aboard Delta Airlines flight 1692.

   A. ESPINOZA was traveling on a one-way ticket, purchased just two (2) days prior to his flight.

   B. ESPINOZA, a resident of Chula Vista, California, did not purchase a round trip ticket for his travel from San Diego to Georgia and back.

   C. ESPINOZA was traveling with no checked luggage.

   D. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers. They knew the purchase of a cross-country, one-way airline flight ticket a day or two before departure is unusual, and can be indicative the traveler is an illegal drug or drug currency courier.

   E. The TFOs and DEA agents knew the general traveling public purchases round trip airline tickets weeks or even months in advance of the scheduled departure date. Advance purchase of round trip airline tickets results in lower fares for the traveler. Purchasing a one-way airline ticket even a week in advance of departure all but guarantees one will pay the highest fare.

//

F. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug and drug currency couriers. They knew illegal drug and drug currency couriers often times do not know when drugs or currency will be available for transport until the last minute. The nature of illegal drug trafficking, and its uncertainties, often compel couriers and their employers to purchase airline tickets close to the departure date.

G. The TFOs and DEA agents were trained and experienced, and knew that San Diego is a primary source region for controlled substances cultivated and manufactured on the west coast of the United States ("west coast"), Latin America, and elsewhere.

H. The TFOs and DEA agents were trained and experienced, and knew that controlled substances cultivated and manufactured on the west coast, in Latin America, and elsewhere were sent and distributed for resale from source regions such as San Diego to all points north and east within the United States. In their experience, the Atlanta, Georgia region was a known destination market for controlled substances.

5. The Task Force officers reviewed official United States, state, and local criminal history data bases, and learned that ESPINOZA had records of criminal activities in both California and Nevada dating back to 2006 for, *inter alia*, domestic battery, kidnapping, unlawful sex with a minor, and driving while under the influence of drugs. ESPINOZA also had two (2) active arrest warrants issued in

San Diego County for driving under the influence of drugs, and driving with a suspended driver's license.

6. On September 14, 2017, just before 9:45 p.m. in SDIA Terminal Two, the TFOs and DEA agents prepared for the arrival of Delta Airlines flight 1692 and passenger ESPINOZA.

   A. At approximately 9:45 p.m., shortly after Delta Airlines flight 1692 landed, the TFOs and DEA agents, armed with a physical description and photo of ESPINOZA gleaned from his criminal history documentation, identified him as he exited the jet way from Gate 47.

   B. The agents noted that ESPINOZA was carrying a small carry-on bag.

   C. As ESPINOZA entered the Gate 47 waiting area, he appeared to look directly as TFO Billberry and DEA Special Agent Hein.

   D. Upon seeing TFO Billberry and Agent Hein, ESPINOZA made an abrupt turn away from the agents, and walked toward the departure gates.

   E. After making the abrupt turn, ESPINOZA walked against the flow of deplaning passengers proceeding on to baggage claim.

   F. TFO Billberry followed ESPINOZA for approximately 40 yards until ESPINOZA stopped, adjusted himself and his carry-on bag, and changed directions.

   G. As ESPINOZA walked toward baggage claim, TFO Billberry and TFO Williams, walked up to ESPINOZA, identified themselves as law enforcement officers, and showed ESPINOZA their respective law enforcement credentials.

      H.   TFO Billberry assured ESPINOZA he was not in trouble, and asked if the officers could speak with him about his travels.

      I.   Although he displayed signs of anxiety, ESPINOZA was cooperative and stopped to speak with TFO Billberry.

      J.   TFO Billberry explained to ESPINOZA, among other things, the SDIA NTF interdiction team just wanted to be sure ESPINOZA was not traveling with contraband such as illegal drugs, weapons, or large amounts of currency.

      K.   ESPINOZA told TFO Billberry he had approximately $4,000.00 in cash in his carry-on bag.

  7.   ESPINOZA told TFO Billberry the officers had his permission to search the interior spaces and contents of his carry-on bag.

  8.   ESPINOZA accepted TFO Billberry's invitation to conduct the search of his carry-on bag away from the crowds of SDIA passengers, in the privacy of the nearby SDIA NTF office.

      A.   ESPINOZA told TFO Billberry he would feel more comfortable in a private area.

      B.   ESPINOZA walked with TFO Billberry to the SDIA NTF office.

  9.   Upon arriving at the SDIA NTF office, ESPINOZA placed his carry-on bag on a table.

      A.   TFO Billberry again asked ESPINOZA how much money he had in his carry-on bag.

      B.   ESPINOZA told TFO Billberry he had approximately $20,000.00 in his bag.

    C.   Moments later, ESPINOZA told TFO Billberry he had approximately $55,000.00 in his bag.

10. Acting on ESPINOZA'S expression of consent to search the carry-on bag, DEA Agent Hein examined and inventoried its contents.

    A.   Agent Hein discovered several bundles of U.S. currency, each secured with rubber bands, secreted throughout the carry-on bag.

    B.   The currency discovered in the carry-on bag was combined, counted, and determined to have a dollar value of $56,365.00.

    C.   The $56,365.00 discovered in the carry-on bag is the defendant $56,365 in currency.

11. ESPINOZA told TFO Billberry the defendant $56,365.00 represented the proceeds from the sale of four (4) vehicles ESPINOZA purchased and re-sold while he was in Atlanta, Georgia.

    A.   ESPINOZA told TFO Billberry he purchased the four (4) vehicles from an unnamed insurance company, and re-sold them to unnamed individuals.

    B.   ESPINOZA told TFO Billberry he was in Atlanta, Georgia conducting the four (4) vehicle sales over the course of the last three (3) months.

    C.   Moments later, ESPINOZA told TFO Billberry he was in Atlanta, Georgia for two (2) weeks.

    D.   Later, investigating DEA agents learned ESPINOZA flew from SDIA to ATL on September 5, 2017.

    E.   Later, investigating DEA agents learned ESPINOZA

checked into a Comfort Inn in Conyers, Georgia in the early morning hours on Wednesday, September 6, 2017, and checked out on September 14, 2017, the day of his return flight from ATL to SDIA.

    F. ESPINOZA was unable to produce any documentation, electronic or otherwise, memorializing the purchase, marketing, or sale of any of the four (4) vehicles.

    G. ESPINOZA was unable to produce any form of verification or corroboration in support of his story that he sold even a single vehicle while in Atlanta, Georgia.

12. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug traffickers and drug currency couriers, and had encountered other drug sales currency couriers in the past who insisted the currency they were carrying represented proceeds from the sales of vehicles; it was a common story.

13. At the NTF office, the officers gathered, examined, and counted the defendant $56,365 in currency, found concealed inside ESPINOZA'S carry-on bag.

    A. The defendant $56,365 in currency was made up of approximately 2,030 bills in a variety of denominations.

    B. The great majority of the bills, to wit: 1,449, were in the $20.00 denomination.

14. The TFOs and DEA agents had specialized training and were experienced in investigating illegal drug traffickers and drug currency couriers. They knew illegal street drug sales were virtually always conducted as an exchange of drugs for currency.

  A. The most common denomination used in illegal street drug transactions was the $20.00 bill.

  B. Approximately 71% of the defendant $56,365 in currency was made up of $20.00 bills.

15. On September 14, 2017, at the SDIA NTF office, a TFO narcotic detection dog handler ("TFO dog handler") used his trained and certified narcotic detection dog to conduct an examination of the defendant $56,365 in currency.

  A. TFO dog handler and the narcotic detection dog were trained and certified as a dog handler and narcotic detection dog team.

  B. The narcotic detection dog was specially trained to display a behavior or "alert" when it encountered the scents or odors of a variety of controlled substances.

  C. TFO dog handler was trained and experienced in recognizing his dog's trained behaviors or alerts.

  D. When exposed to the defendant $56,365 in currency, the drug detection dog alerted to the presence of the scent of one or more controlled substances emanating from the defendant $56,365 in currency.

  E. The TFO dog handler observed the alert, told the other TFOs of the alert, and explained its significance.

16. The defendant $56,365 in currency was seized for forfeiture by the DEA as currency constituting proceeds of the purchase(s) of controlled substances, and money possessed with the intent to be furnished in exchange for controlled substances.

17. The defendant $56,365 in currency constitutes money

furnished or intended to be furnished in exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

18. Alternatively, the defendant $56,365 in currency constitutes proceeds of, or proceeds traceable to, an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

19. Alternatively, the defendant $56,365 in currency was used or intended to be used to facilitate an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

20. As a result of the foregoing, the defendant $56,365 in currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 21, United States Code, §881(a)(6).

21. The defendant $56,365 in currency is presently deposited within the jurisdiction of this Court.

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant $56,365 in currency, and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: February 13, 2018

ADAM L. BRAVERMAN
United States Attorney

s/ Bruce C. Smith
BRUCE C. SMITH
Assistant U.S. Attorney

%JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | $56,365.00 in U.S. Currency |

| (b) County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number) AUSA Bruce C. Smith, Phone: (619) 546-8266 USAO, 880 Front Street, Room 6293, San Diego, CA 92101-8893 | Attorneys (If Known)    '18CV0341 BEN MDD |

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- [X] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                   and One Box for Defendant)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment |  ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending |  |  | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** |  | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** |  |  |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  | ☐ 950 Constitutionality of State Statutes |
|  |  / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

## V. ORIGIN   (Place an "X" in One Box Only)

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. Section 881

Brief description of cause:
Narcotics trafficking

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 02/13/2018 | s/ Bruce C. Smith |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

<u>VERIFICATION</u>

I, Daniel Billberry, state and declare as follows:

1. I am a Task Force Officer, assigned to a San Diego Integrated Narcotics Task Force, Team 8, and am one of the task force officers assigned to this investigation.

2. I have read the foregoing complaint and know its contents.

3. The facts set forth in the complaint are based upon my own knowledge or were facts furnished to me by other United States federal, state, or local law enforcement personnel, civilian witnesses, or other official Government sources.

Based on this information, I believe the allegations in the complaint to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on February /3 , 2018.

_____
DANIEL BILLBERRY, TFO
NTF TEAM 8